UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CAPTAIN JAMES BRUCE HOCKING, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 10-11007-DJC |
| UNITED STATES OF AMERICA and UNITED STATES COAST GUARD, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM AND ORDER

April 1, 2011

**CASPER, J.**

### I. Introduction

Plaintiff Captain James Bruce Hocking ("Hocking") seeks judicial review of a decision by Defendants United States and the United States Coast Guard ("Defendants" or "the Coast Guard") declaring him medically unfit to perform his duties as a merchant mariner, due to the defibrillator surgically implanted in his chest, and refusing to grant him a medical waiver that would allow him to renew his currently active merchant mariner license when it expires in October 2012. Specifically, Hocking contends that the Coast Guard's decision violated his rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, because, he alleges, the Coast Guard failed to conduct an individualized inquiry as to whether Hocking is qualified to perform the duties of a merchant mariner despite the presence of his defibrillator; he alleges that, instead, the Coast Guard based its decision entirely upon a regulation issued by the Coast Guard in 2008, which states that the presence of an implantable defibrillator is "generally not waiverable."

1

Defendants have moved to dismiss this action with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim upon which relief can be granted). For the reasons stated below, the court GRANTS the motion to dismiss.

II.     **Factual Background**[1]

Hocking has had a long and distinguished career with the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority. He first went to sea as a merchant mariner in 1973, in the capacity of an Able-Bodied Seaman; rose through the ranks to serve as a Bosun and Chief Bosun and in 1984 was issued his first Coast Guard License to serve as a merchant marine officer. His license was renewed in 1988 and again in 1993.

In March of 1995, Hocking suffered a tachycardiac event (a rapid heartbeat) and, as a result, had a implantable cardiac defibrillator surgically implanted in his chest. In October of that year, Hocking took his required annual Coast Guard medical examination and was declared competent to sail under his license. He was also declared competent to sail after subsequent examinations in 1996 and 1997.

In 1998, as part of the process of renewing his license, Hocking was required to submit medical documentation regarding his defibrillator to the Coast Guard. After the Coast Guard reviewed the documents, and after Hocking was again medically examined and declared competent to sail, the Coast Guard issued Hocking a medical waiver and re-issued his license. Hocking

---

[1] In ruling on a motion to dismiss, the Court accepts plaintiff's allegations in the complaint as true and construes them in the light most favorable to the plaintiff, although the Court need not credit bald assertions or unverifiable conclusions. Ashcroft v. Iqbal, - - U.S. - -, 129 S.Ct. 1937, 1949-50 (2009).

continued to submit to annual medical examinations establishing his competence to sail and his license was renewed in 2002 and again in 2007.

In 2008, the Coast Guard issued Navigation and Vessel Inspection Circular No. 04-08, which provided new "guidance for evaluating the physical and medical conditions of applicants for merchant mariner documents and licenses."[2] The guidance stated that surgically implanted defibrillators were "generally not waiverable."

### III. Procedural History

A. Medical Waiver Proceedings

On April 2, 2009, the Coast Guard sent Hocking a letter informing him that his annual request for a medical waiver was denied. The letter stated that the Coast Guard had "reviewed Mr. Hocking's annual pilot physical examination" and concluded that he was "not medically fit for [his] merchant mariner duties due to a heart condition and an Implantable Cardiac Defibrillator (ICD)." The letter referenced information submitted by Hocking's doctor and noted that "[a]lthough the

---

[2]When promulgating the draft version of NVIC 04-08 in the Federal Register, the Coast Guard explained the impetus behind the new standard:

> [T]here are public safety risks associated with some medical and physical conditions, particularly when these conditions may result in the sudden incapacitation of mariners on vessels. These conditions can be the root cause of a maritime mishap. The NTSB [National Transportation Safety Board], in their report on the 2003 collision of the Staten Island ferry ANDREW J. BARBERI, determined that the assistant captain's unexplained incapacitation was a causal factor in the casualty, resulting in the deaths of 10 passengers and injuries to 70 others. The report recommended that the Coast Guard review several issues in the merchant mariner physical and medical evaluation process. The proposed NVIC is a critical component of the Coast Guard's response to the NTSB report.

Medical and Physical Evaluation Guidelines for Merchant Mariner Credentials, 71 Fed. Reg. 56998-01, 2006 WL 2769993, at 56,998-99 (Sep. 28, 2006).

record indicates your ICD has not fired (delivered an electric shock to the heart) recently, the ICD and the condition for which it was placed (ischemic cardiomyopathy) represent an unacceptable risk to maritime an public safety." The letter also stated that, due to "risks for incapacitation, no waivers for ICD devices are currently being recommended for approval."

On April 25, 2009, Hocking requested that the Coast Guard reconsider its decision. The Coast Guard responded in writing on June 12, 2009 informing Hocking that it had denied his request for reconsideration and reaffirmed its decision. The letter noted that, "[a]lthough your doctor feels you are physically competent to operate under the authority of your license as a first class pilot, the Coast Guard maintains final approval authority in all mariner fitness for duty evaluations," and, "[a]fter careful review of all of the medical evidence and the documents [used in the Coast Guard's initial determination], we conclude you are medically unfit for your merchant mariner duties and the denial is hereby upheld."

On October 6, 2009, Hocking further appealed the Coast Guard's decision, this time to the Coast Guard's Director of Prevention Planning. By letter dated February 15, 2010, the Director denied Hocking's appeal and reaffirmed the Coast Guard's prior decision. The letter noted that the Coast Guard had reviewed Hocking's medical records both "[a]s part of their initial evaluation and in reconsideration of that decision," and that, further, "[i]n connection with this appeal, an independent review of [Hocking's] medical fitness was performed by a physician at Coast Guard Headquarters," and "[t]he reviewing physician concurred with the previous evaluations by the [Coast Guard] and indicated concern of a possible recurrence of ventricular tachycardia . . . and that even with an ICD there is the potential to significantly affect his ability to safely operate a vessel." The letter stated that "[t]his constitutes final agency action" and made clear that Hocking had to

surrender his license to the Coast Guard or else face revocation and suspension proceedings.

Hocking did not surrender his license.

### B. Revocation and Suspension Proceedings

On March 23, 2010, the Coast Guard filed a complaint for license revocation and suspension proceedings against Hocking, alleging that Hocking's defibrillator and his underlying cardiac condition rendered him physically incompetent and unfit for merchant mariner duties. The complaint also alleged that, even though the Coast Guard notified Hocking on April 2, 2009 that he was not medically fit for merchant mariner duties, Hocking nonetheless served as Captain of the M/V NANTUCKET upon the waters of Nantucket Sound on multiple occasions in May 2009 (while Hocking's initial request for reconsideration was pending), an act of incompetence sufficient to justify the revocation or suspension of his license per 46 U.S.C. § 7703(4).

In his answer to the complaint, Hocking argued, for the first time, that NVIC 04-08 violated the Rehabilitation Act of 1973, 29 U.S.C. § 794, and thus the Coast Guard's reliance on NVIC 04-08 when denying Hocking a medical waiver was also in violation of the Rehabilitation Act.

On April 23, 2010, an administrative law judge ("ALJ") scheduled a hearing on the Coast Guard's complaint for June 30, 2010, later rescheduled for September 23, 2010. Prior to the hearing, both Hocking and the Coast Guard moved for summary judgment. The ALJ denied the cross-motions and reiterated his intent to proceed with a hearing. In the order denying the cross-motions, the ALJ clarified that "[t]he denial of [Hocking]'s request for a medical waiver . . . is not in issue in this suspension and revocation proceeding," and that "[t]he charged violation in this matter arises from a required annual physical examination of [Hocking,] not an application for renewal of his current credentials." The point of the administrative proceeding, the ALJ stated, was to adjudicate

the dispute between Hocking and the Coast Guard as to Hocking's claim that "the undisputed medical evidence shows that Hocking is able to perform his duties." The ALJ refused to foreclose the introduction of additional medical evidence, noting that, "[w]hile the fact of the existence of [Hocking]'s heart condition and ICD do not appear to be in dispute, the record may benefit from medical testimony that further explains the written documentation regarding his condition and how it may affect his fitness for duty." The ALJ also specifically "encouraged" Hocking and the Coast Guard "to provide any evidence or authority regarding the changes to medical requirements for Mariners contained in [NVIC] No. 04-08 . . . in the past year if it appears that any such changes may be relevant to this matter."

At the September 23, 2010 hearing, the ALJ heard testimony from the Coast Guard doctor who reviewed Hocking's medical records. Hocking offered numerous medical records into evidence (including reports from eight separate physical examinations of Hocking) and cross-examined the Coast Guard doctor extensively, but did not present any direct medical testimony by his cardiologist or any other medical doctor. Hocking also presented additional post-argument briefing regarding his rights under the Rehabilitation Act.

The ALJ issued his decision on January 4, 2011. The ALJ found that the medical evidence constituted sufficient proof of Hocking's medical incompetence. The ALJ also found that Hocking's Rehabilitation Act claims against the Coast Guard failed, both because merchant mariner positions require physical standards that exceed what is required of the general population, rendering the Rehabilitation Act inapplicable, and because the Coast Guard is not Hocking's employer. The ALJ revoked Hocking's license.

C. Hocking's Complaint and Motion for Preliminary Injunction

6

On June 16, 2010, after Hocking and the Coast Guard had filed for summary judgment in the administrative proceedings but before the ALJ had denied the cross-motions, held the revocation hearing, or issued his decision revoking Hocking's license, Hocking brought the instant action in this Court. In his complaint, Hocking claimed that he was entitled to judicial review under the Administrative Procedure Act ("APA"), alleged violations of his rights under the Rehabilitation Act and due process, and sought 1) a declaratory judgment that NVIC 04-08 is in violation of the Rehabilitation Act, 2) a decision vacating all Coast Guard decisions denying the medical waiver sought by Hocking, 3) de novo judicial review of Hocking's request for a medical waiver and 4) injunctive relief staying the (not-yet-begun) revocation and suspension proceeding before the ALJ.[3] The case was assigned to Judge Tauro.

The next day, June 17, 2010, Hocking moved for a preliminary injunction staying the proceedings before the ALJ. The parties jointly asked the ALJ to postpone the administrative hearing until the court could resolve Hocking's motion for a preliminary injunction and the ALJ agreed to do so. After thorough briefing, Judge Tauro held a hearing on July 20, 2010 regarding Hocking's preliminary injunction motion.

D. Judge Tauro's Order

In an Order issued July 21, 2010 ("July 21st Order"), Judge Tauro denied Hocking's motion for preliminary injunction on the grounds that 1) the Coast Guard had not yet reached a final

---

[3]Hocking's complaint brought one count under the APA and one count directly under the Rehabilitation Act. Hocking subsequently acknowledged that the First Circuit does not recognize a private right of action under the Rehabilitation Act, see Cousins v. Sec'y. of the U.S. Dep't of Transp., 880 F.2d 603 (1st Cir. 1989), and that Hocking's exclusive remedy in this action lies under the APA. Hocking does not oppose the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) to the extent it seeks to dismiss his claims brought directly under the Rehabilitation Act.

7

decision on Hocking's Rehabilitation Act claim and 2) Hocking could receive an adequate remedy from any such final decision in the United States Court of Appeals.

    E. Motion to Dismiss

The United States and the Coast Guard moved to dismiss Hocking's federal complaint in its entirety. Relying on the July 21st Order, they argue that this court lacks jurisdiction under the APA to hear Hocking's claims. The case was reassigned to this session on January 20, 2011 and the Court heard oral argument on March 2, 2011.

**IV.**   **Legal Analysis**

The APA grants courts jurisdiction only over final agency actions for which there is no other adequate remedy in a court. 5 U.S.C. § 704. The July 21st Order held that neither prong was satisfied in this case. Absent reconsideration of the July 21st Order, these holdings are law of the case. The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). The doctrine holds that "a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court," and "binds . . . a successor trial judge who steps in to complete a pending case." United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004).

Hocking agreed at oral argument that the holdings in the July 21st Order regarding final agency action and alternative adequate judicial remedies, if correct, would deprive this Court of jurisdiction over the instant action. As Hocking's counsel appropriately acknowledged, Hocking's opposition to the Coast Guard's instant motion to dismiss is thus, at its base, a request for this Court

8

to reconsider the July 21st Order. Reconsideration is appropriate only in the presence of "a manifest error of law or newly discovered evidence," Kansky v. Coca-Cola Bottling Co. of New Eng., 492 F.3d 54, 60 (1st Cir. 2007) (discussing a motion to alter or amend judgment under Fed. R. Civ. P. 59(e)); it is not a mechanism designed to "allow the losing party to repeat old arguments previously considered and rejected." Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990) (discussing same).

> A. Final Agency Action

As a general matter, two conditions must be satisfied for agency action to be "final." "First, the action must mark the 'consummation' of the agency's decisionmaking process[;] it must not be of a merely tentative or interlocutory nature." Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (quoting Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948)). "And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Id. at 178 (quoting Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)). The July 21st Order held that "there has been no final agency action with regard to the specific issue [Hocking] asks this court to review, namely whether the Coast Guard's decision as to [Hocking]'s medical fitness violated his rights under the Rehabilitation Act. . . . Because the Coast Guard has not yet had an opportunity to address the Rehabilitation Act challenge presented here, this court cannot conclude that any prior agency action that has occurred marks the consummation of the agency's decisionmaking process on that issue."

Hocking disagrees. At oral argument, counsel for Hocking spent considerable time emphasizing the difference between "Part 5" suspension and revocation proceedings (so called

9

because they arise under Part 5 of the relevant Coast Guard regulations, 46 C.F.R. §§ 5.3-5.905) and "Part 10" medical waiver proceedings (which arise under Part 10 of the regulations, 46 C.F.R. §§ 1.03-15, 10.215, 10.237). Hocking conceded that his Part 5 proceedings were not yet final,[4] but argued that his Part 10 proceedings had reached a final result - indeed, the February 15, 2010, letter from the Coast Guard's Director of Prevention Planning denying Hocking's administrative appeal regarding his medical waiver explicitly stated that "[t]his constitutes final agency action" - and it was the final result of the Part 10 medical waiver proceedings for which Hocking sought this Court's review.

The Court acknowledges the distinction between proceedings under Part 5 and Part 10, but does not find the distinction relevant to this case. Hocking's federal complaint rests heavily on his rights under the Rehabilitation Act (as raised under the APA rather than as a private right of action under the Rehabilitation Act itself). Hocking never raised this issue in his Part 10 medical waiver proceedings; instead, he raised the Rehabilitation Act issue for the first time in his response to the Coast Guard's complaint in the later (and still ongoing) Part 5 suspension and revocation proceedings. When the Coast Guard issued its letter of February 15, 2010, it had not yet begun, much less consummated, its decisionmaking process regarding Hocking's Rehabilitation Act claims, and the letter is therefore not final agency action for the purposes of the claims underlying Hocking's current federal action. Agency action on those claims will be final only when Hocking's pending Part 5 administrative proceedings are concluded.

---

[4]The status of Hocking's Part 5 proceeding is the same as of the date of this writing as it was at oral argument: Hocking has received the January 4, 2011 adverse ALJ decision revoking his license, but has not completed the Coast Guard's administrative appellate process, which, as discussed below, includes an appeal to the Commandant of the Coast Guard.

B.  Adequate Remedy in Court

Even once an agency action is final, a court only has APA jurisdiction over the final agency action if the party appealing the action "has no other adequate remedy in a court."  5 U.S.C. § 704; see Conservation Law Found., Inc. v. Busey, 79 F. 3d 1250, 1257 (1st Cir. 1996) ("jurisdiction under the APA is precluded" if alternate court jurisdiction exists).  The July 21st Order concluded as follows:

> It is . . . clear from the ALJ's [June 22, 2010] Order that [Hocking] may present and preserve any issues bearing on his medical fitness, as well as the potential license revocation that flows therefrom, in the administrative hearing.[5]  And if, on completion of the hearing, the ALJ should either reject or fail to address [Hocking]'s Rehabilitation Act challenge,[6] [Hocking] is not without an adequate judicial remedy.  To the contrary, he may appeal an adverse decision to the Commandant, then to the National Transportation Safety Board, and finally to the United States Court of Appeals.

As to this final step - appeal to the United States Court of Appeals - the July 21st Order specifically noted that "upon judicial review, the Administrative Procedures Act requires the United States Court of Appeals to set aside agency action if it is 'not in accordance with law' or is 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'"  The source of the language quoted in the July 21st Order is 5 U.S.C. § 706(2), the subsection of the APA that deals with the scope of judicial review; the July 21st Order also included a citation to Cousins v. Sec'y of the U.S. Dep't of Transp., 880 F. 2d 603, 605 (1st Cir. 1989), which quoted the same statutory language.  If Hocking ultimately has a remedy for his Rehabilitation Act claims via direct appeal to the United

---

[5] As noted above, Hocking did in fact present evidence on these issues at the September 23, 2010 hearing before the ALJ.

[6] As noted above, the ALJ did in fact consider and reject Hocking's Rehabilitation Act claims.

States Court of Appeals, this Court would be precluded from exercising APA jurisdiction over the Coast Guard action at issue here even if the action was final. Conservation Law Found., 79 F. 3d at 1257.

Hocking offers four arguments in support of his contention that the July 21st Order is in error with regard to Hocking's alternative judicial remedy. First, Hocking notes that 5 U.S.C. § 706, the section of the APA quoted in the July 21st Order, does not explicitly refer to the United States Court of Appeals, but only to "the reviewing court." However, as the July 21st Order pointed out, if Hocking appeals the ALJ's revocation decision, his appeal shall be directed to the Commandant of the Coast Guard, 33 C.F.R. § 20.1003;[7] if he appeals the Commandant's decision, his appeal shall be heard by the National Transit Safety Board, 49 U.S.C. § 1133;[8] if he appeals the NTSB's decision, under 49 U.S.C. § 1153(a),[9] the reviewing court is the United States Court of Appeals. The July 21st Order is correct on this point.

Second, Hocking argues that the July 21 Order's reliance on Cousins, 880 F. 2d 603, was improper because Cousins dealt with truck drivers appealing Department of Transportation Surface

---

[7] "Each party appealing the ALJ's decision or ruling shall file an appellate brief with the Commandant." The Court notes that in non-revocation circumstances it is the Vice Commandant, not the Commandant, who makes appellate decisions at this stage. 33 C.F.R. § 1.01-40 (delegating authority from Commandant to Vice Commandant).

[8] "The National Transportation Safety Board shall review on appeal . . . (3) a decision of the head of the department in which the Coast Guard is operating on an appeal from the decision of an administrative law judge denying, revoking, or suspending a license."

[9] "The appropriate court of appeals of the United States or the United States Court of Appeals for the District of Columbia Circuit may review a final order of the National Transportation Safety Board under this chapter." The Court notes that this is the only provision for judicial review in the chapter of the United States Code governing the NTSB, Chapter 11 (entitled "National Transportation Safety Board") of Title 49 (entitled "Transportation"), 49 U.S.C. § 1101 et seq.

Transportation Board rules under a now-partially-defunct version of 28 U.S.C. § 2342(5), not with merchant mariners raising Rehabilitation Act claims under appellate processes ultimately governed by 49 U.S.C. § 1153. But this characterization overstates the citation to Cousins; the July 21st Order relied solely and squarely on the text of the APA set forth at 5 U.S.C. § 706(2) of the APA, and cited to Cousins because it was (and, regardless of any amendments to 29 U.S.C. § 2342, still remains) an illustration of the First Circuit's reliance on the text of 5 U.S.C. § 706(2) for the proposition that the APA gives courts jurisdiction not only over claims that an agency decision was an arbitrary or capricious interpretation of the agency's regulations, but also over claims (like Hocking's Rehabilitation Act claim) that an agency's conduct may have been consistent with agency regulations but that the conduct or the regulations themselves violate a federal statute. See Cousins, 880 F. 2d at 608.

Next, Hocking argues that even if he does eventually appeal the ALJ decision suspending Hocking's license, the United States Court of Appeals will only have jurisdiction over his claims regarding the license revocation or suspension proceedings, not over his claims regarding his medical waiver proceedings, including but not limited toe his Rehabilitation Act claims. But, as the July 21st Order correctly anticipated, the ALJ interpreted the scope of the revocation proceedings broadly - taking evidence from both Hocking and the Coast Guard regarding Hocking's "medical condition and how it may affect his fitness for duty," the changes to NVIC No. 04-08, and whether Hocking may be medically fit for duty even "despite the absence of a medical waiver" - and discussed the merits of Hocking's Rehabilitation Act claim, preserving these issued for both administrative and judicial review. All these issues will be before the United States Court of Appeals should Hocking pursue his appeal that far. Pursuant to 5 U.S.C. § 706, the court that

reviews this type of appeal from the NTSB has far-reaching authority to resolve any and all of these issues to the extent the reviewing court finds it necessary to do so.

Finally, Hocking points to McDonald v. United States, 2005 WL 1571215 (S.D. Tex. June 30, 2005), for the proposition that Coast Guard actions may be considered final at the Commandant level of administrative review, not at the NTSB level of administrative review, and thus the administrative and judicial review process may flow from the Commandant to the district court, rather than from the Commandant to the NTSB to the United States Court of Appeals as suggested by the July 21st Order. But see Dresser v. Meba Med. Benefits Plan, 2010 WL 125624 at *6 (E.D. La. March 24, 2010) (holding that the district court has no APA jurisdiction to review suspension and revocations decisions made by the Commandant, which must be appealed to the NTSB and then the United States Court of Appeals). Even assuming without deciding that Hocking is correct in his assertion that there are two paths by which he may obtain APA-approved judicial review of the Coast Guard's administrative determination of his Rehabilitation Act rights, however, the instant action has not yet completed either of those paths: Hocking may not seek judicial review for his Rehabilitation Act claims until the Commandant reviews the ALJ's rejection of those claims, at which point Hocking can appeal to either the United States District Court (if Hocking's assertion regarding appellate procedure is correct) or, consistent with the process describe in the Order, to the NTSB and the United States Court of Appeals. Because those courts provide Hocking with an adequate judicial remedy for the claims he seeks to press in the instant action, this Court is precluded from exercising APA jurisdiction. Conservation Law Found., 79 F. 3d at 1257.

## VI.     Conclusion

Dismissal of this matter follows from the holdings in the July 21st Order, and, for the

14

foregoing reasons, there is no reason to reconsider any aspect of the July 21st Order. The Defendants' motion to dismiss is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge